IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA KELLY WEBB,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | CIVIL ACTION<br>NO. 13-5528 |

### MEMORANDUM

**SCHMEHL, J.**   /s/ JLS                                                              April 16, 2015

Plaintiff Christina Kelly Webb sought judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits, which was embodied in the January 27, 2012, decision of Administrative Law Judge Paula Garrety. The matter was referred to United States Magistrate Judge Timothy R. Rice, who issued a Report and Recommendation on July 31, 2014. Plaintiff thereafter filed comprehensive objections. The Court adopts the Magistrate Judge's Report and Recommendation, supplemented by the following discussion to address Plaintiff's objections.

Plaintiff's objections correspond to the sections of the Report and Recommendation, addressing: the rejection of the opinions of the treating experts, Dr. Steel and Ms. Ostertag; the treatment of the opinions of the consulting experts, Dr. Schwarz and Dr. Adamo; and the alleged failure to address Plaintiff's husband's statement. The first two aspects are in many ways intertwined, as the debate generally concerns the ALJ's disagreement with Dr. Steel, Ms. Ostertag, and Dr. Schwarz, and

agreement with Dr. Adamo—the distinction between treating and consulting experts is not especially useful.

Much of Plaintiff's emphasis within these objections concerns alleged failures on the part of the ALJ to consider or give proper weight to various fact and opinion evidence. But there is a difference between dismissing or underweighting evidence and simply refusing to accept or agree with that evidence after due consideration. Moreover, the focus must be on whether the evidence on which the ALJ did rely is sufficient, rather than on what other evidence may have been present. "Courts may review the Commissioner's factual findings only to determine whether they are supported by substantial evidence. . . . The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 955 (3d Cir. 2006) (internal citations omitted).

One specific argument Plaintiff makes is that it is improper to discount a doctor's ultimate evaluation opinion because of inconsistency with earlier notes made in relation to treatment:

> [Differing] assessments are not necessarily contradictory, however, [where] one assessment was describing Brownawell's condition at the time of Dr. Picciotto's examination and the other reflected Dr. Picciotto's assessment of Brownawell's ability to function in a work setting. As discussed supra, this Court has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work.

*Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 356 (3d Cir. 2008). As noted in the quotation, the Third Circuit had previously made a distinction between an observation that a patient with an anxiety disorder was stable when on medication in a

2

treatment setting and an ultimate conclusion that he might nevertheless have trouble in a more stressful work setting. *See Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). Certainly the context of a doctor's statements can account for what otherwise seems to be inconsistency. Here, though, the issue is not primarily an inconsistency between *opinions* in an evaluation document and *opinions* in treatment notes; rather, the ALJ was pointing to inconsistency between *opinions* in the evaluation and *facts* that happened to be recorded in treatment notes. As discussed at greater length below, the ALJ concluded that a variety of facts about the activities Plaintiff engaged in—some of which are described in the experts' treatment notes—demonstrated that Plaintiff had sufficient residual functional capacity to work. *See Noah v. Astrue*, No. CIV.A. 12-091, 2013 WL 364235, at *5 (W.D. Pa. Jan. 30, 2013) (explaining that *Brownawell* has less force where the expert's opinion conflicts not only with the expert's treatment notes but with other record evidence).

      Another particular error Plaintiff raises, and a subset of the inconsistency issue, is that with respect to Dr. Schwarz's opinion, it was wrong for the Magistrate Judge to characterize the ALJ's rejection of that opinion as being based on inconsistency. It is of course correct that a reviewing court may only rely on the rationale for an administrative decision that was clearly invoked by the agency that made it. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). In the present case, Plaintiff argues that saying Dr. Schwarz "over-estimated [Plaintiff's] functional limitations" is not the same as claiming inconsistency, so for the Court to speak of inconsistency would be to substitute a rationale not used by the ALJ. But the ALJ explicitly stated that "the above-mentioned opinions are not found to be consistent with the objective medical evidence."[1] The ALJ's

---

[1] The "above-mentioned opinions" include that of Dr. Schwarz. The ALJ had just referred to Plaintiff's

decision to give little weight to Dr. Schwarz's opinion was clearly part of the general analysis, described further below, whereby the ALJ found that the evidence showed Plaintiff's limitations were not as work-preclusive as certain experts opined. In that context, stating that Dr. Schwarz "over-estimated" limitations is simply another way of saying that the opinion's estimation of Plaintiff's limitations was inconsistent with the other evidence, including other evidence from Dr. Schwarz's own notes.

In any event, these specific criticisms of the ALJ's treatment of the opinion evidence are almost beside the point. Plaintiff seems to assume that if she can show particular flaws that take the ALJ's reading of the opinion evidence out of the equation, then the ALJ's entire determination will be rendered baseless. But in reviewing a disability determination, an ALJ directly considers the factual evidence herself, in addition to—rather than merely through the intermediation of—expert opinions. *See Spada v. Bowen*, 687 F. Supp. 188, 191 (E.D. Pa. 1988) ("[T]he ALJ must consider four elements of proof: (1) the objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education and work history."); *see also Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974); *Holley v. Colvin*, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), *aff'd sub nom., Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). What is actually at play in the ALJ's decision is that she rightly conducted a review of the factual evidence present in the record and then considered the expert opinions in relation to the conclusions drawn from that review.

---

January 6, 2012, letter brief, along with the references therein to the opinions of the claimant's psychiatrist and a "consultative examiner." A review of that letter brief confirms the consultative examiner in question is Dr. Schwarz.

4

This reading of the ALJ's opinion is obvious from the fact that she recounted and assessed the factual evidence for four pages before turning to the opinion evidence (except for a brief earlier mention in which she expressly characterizes the pro-Plaintiff opinions generally as "not . . . consistent with the objective medical evidence"). The basic, non-opinion evidence on which the ALJ relied included treatment and examination notes, diagnostic testing results, and statements made at various times by both Plaintiff and her husband. Plaintiff had borderline difficulties with concentration; low diagnostic scores indicating possible serious impairments in social, occupational, or school functioning; bipolar disorder; anxiety, particularly related to going out in public; and possibly some energy/exhaustion issues. However, among other things, Plaintiff was able to: go to the gym twice a day; perform memory and mathematical tasks adequately; perform numerous duties related to keeping house and caring for her family (which she did with only occasional help from her husband); drive; attend her son's football games; help at her daughter's school twice a week; begin learning the real estate business and plan to get a license; and even work more than fifty hours a week at one point during the alleged period of disability. This substantial evidence of the actions and activities Plaintiff did in fact engage in undermines any factual or opinion evidence that would otherwise suggest she was not able to do such things, and a person who can do such things can work in accordance with the residual functional capacity determined by the ALJ.[2]

---

[2] With regard to the ALJ's alleged failure to address Plaintiff's husband's witness statement, Plaintiff points more specifically to the requirement that an ALJ *explicitly* discuss her rejection of such evidence. But from Plaintiff's own citation to SSR 06-3p, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." The Court had no difficulty in following the ALJ's reasoning that Plaintiff's husband's statement did not warrant a contrary conclusion because 1) it indicated that Plaintiff worked and cared for the children

This direct review of the non-opinion evidence, clear from the ALJ's written determination, is why it is not critical whether the precise weighting she gave the expert opinions is perfectly correct—those opinions are not the only potential bases for her determination. Recognizing that the ALJ undertook her own review of the evidence also shows that the weighting she gave the opinions was after all correct, or at least substantially supported. She was not just pointing out technicalities (such as inconsistency between notes and conclusions) in order to discount the opinions; rather, she considered all the evidence and rejected certain opinions because they were too contradictory to the other evidence.

---

without much or any assistance from him, which actually supports the conclusion that Plaintiff was able to work, and 2) the impairments the husband noted must not have severely threatened Plaintiff's ability to do all the things the record indicates she indeed did (working, caring for the household, helping at school, etc.).